# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER JOSEPH ELLOW,  :
                          :   CIVIL ACTION
      Plaintiff,       :
                          :
  v.                     :
                          :   NO. 11-7158
MICHAEL J. ASTRUE, Commissioner :
of Social Security,       :
                          :
      Defendant.       :

## MEMORANDUM

BUCKWALTER, S.J.                                                                                    January 15, 2013

Currently pending before the Court are Plaintiff Christopher Joseph Ellow's Objections to the Report and Recommendation of United States Magistrate Judge Linda K. Caracappa. For the following reasons, the Objections are overruled.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 301, et seq., on April 16, 2009, due to bipolar disorder, anxiety, depression, attention deficit disorder, social phobia, mild obsessive compulsive disorder, insomnia, and infectious endocarditis. (R. 110, 153–54.)[1] The state agency denied Plaintiff's application on July 17, 2009, and Plaintiff timely requested a hearing before an administrative law judge ("ALJ"). (Id. at 110–13.) Following the hearing on March 31, 2010, (id. at 29–84), Administrative Law Judge ("ALJ") Javier Arrastia denied Plaintiff benefits in a

---

[1] For ease of discussion, citations to the administrative record will be referenced as "R. [page number]."

decision dated May 21, 2010. (Id. at 13–25.) The Appeals Council denied Plaintiff's request for review on August 12, 2011, (id. at 6–8), making the ALJ's ruling the final decision of the agency. 20 C.F.R. § 416.1472.

Plaintiff initiated the present civil action in this Court on November 16, 2011. His Request for Review set forth multiple alleged errors, as follows: (1) the ALJ improperly evaluated his substance abuse disorder; (2) the ALJ failed to evaluate all of the relevant medical evidence; (3) the ALJ failed to properly weigh the opinion of the state agency medical expert; (4) the ALJ failed to explain his findings regarding Plaintiff's mental residual functional capacity; (5) the mental residual functional capacity assessment was not supported by substantial evidence; (6) the ALJ failed to properly weigh the physical residual functional capacity assessment of the state agency review decision; (7) the ALJ failed to explain his findings regarding Plaintiff's physical residual functional capacity; (8) the physical residual functional capacity assessment was not supported by substantial evidence; and (9) the ALJ failed to prove at step five of the sequential analysis that there were jobs available in the national economy that Plaintiff could perform on a sustained competitive basis. On November 16, 2012, United States Magistrate Judge Linda K. Caracappa issued a Report and Recommendation ("R&R") deeming these contentions meritless and recommending that the ALJ's decision be affirmed.

Plaintiff filed objections to the R&R, on December 3, 2012, asserting the following: (1) the Magistrate Judge improperly found that the ALJ had no duty to comply with applicable law and regulations concerning Plaintiff's drug and alcohol abuse; (2) the Magistrate Judge incorrectly determined that the ALJ's mental residual functional capacity assessment was without error; (3) the Magistrate Judge failed to address Plaintiff's argument that the ALJ had a duty to

discuss detailed hand written statements from the treating psychiatrist *or* had a duty to recontact the treating psychiatrist for clarification; and (4) the Magistrate Judge improperly found that the ALJ was not required to explain why Plaintiff could sustain work activity despite being unable to do so for all jobs he performed in the past. To date, Defendant has not filed a Response to these Objections, making them ripe for this Court's consideration.

## II.  STANDARD OF REVIEW[2]

When a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in *de novo* review of the issues raised on objection.  28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).  In so doing, the court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report.  28 U.S.C. § 636(b)(1).  The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations.  See United States v. Raddatz, 447 U.S. 667, 676 (1980).

The Court's review of an ALJ's findings of fact, however, is limited to determining whether or not substantial evidence exists in the record to support the Commissioner's decision. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).  *De novo* review of the Commissioner's decision is not permitted.  Monsour Med. Ctr. v. Heckerl, 806 F.2d 1185, 1190–91 (3d Cir. 1986).  Stated differently, "[t]his Court is bound by the ALJ's findings of fact if they are supported by substantial evidence on the record."  Plummer v. Apfel, 186 F.3d 422, 427

---

[2] Plaintiff's medical history and the five-step legal framework for assessing a disability claim were adequately summarized by the Magistrate Judge.  In lieu of repeating that discussion, the Court incorporates by reference those portions of the R&R into this Memorandum.

(3d Cir. 1999). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552 (1988)).

## III. DISCUSSION

### A. Whether the Report and Recommendation Improperly Found that the ALJ Had No Duty to Comply with Applicable Law and Regulations Concerning Plaintiff's Drug and Alcohol Abuse

Plaintiff's first objection asserts that the ALJ failed to comply with the Commissioner's regulation concerning evaluation of substance abuse disorders. Upon review, the Court finds no merit to this contention.

In 1996, Congress amended the Social Security Act to preclude award of supplemental security income if drug addiction or alcoholism ("DAA") would be "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C) & 1382c(a)(3)(J); see also 20 C.F.R. § 416.935. To determine if DAA is "a contributing factor material to the determination of disability," the key question is whether the claimant would still be considered disabled if she stopped using drugs and/or alcohol. 20 C.F.R. § 416.935(b)(1); Gaines v. Astrue, No. Civ.A.10-5098, 2011 WL 5555629, at *1 n.1 (E.D. Pa. Sept. 7, 2011); Davis v. Astrue, 830 F. Supp. 2d 31, 37–38 (W.D. Pa. 2011). This inquiry involves several steps. In cases where there is evidence of drug addiction or alcoholism, the ALJ first performs the normal five-step analysis to determine if the claimant is disabled. Id.; 20 C.F.R. § 416.935(a). "Assuming he concludes that she is disabled (including any impairment attributable to DAA), he then performs a second analysis to determine the effects of drug or

4

alcohol abuse." Davis, 830 F. Supp. 2d at 38. The ALJ must then evaluate which of the claimant's current physical and mental limitations, upon which the disability determination is based, would remain if the claimant stopped using drugs or alcohol and then decide whether any or all of the claimant's remaining limitations would be disabling. 20 C.F.R. § 416.935(b)(2); Gaines, 2011 WL 5555629, at *1 n.1. If the remaining limitations are not disabling, then the drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(b)(2)(i); Gaines, 2011 WL 5555629, at *1 n.1. If the remaining limitations are disabling, the claimant is disabled independent of his drug addiction or alcoholism, and the DAA not a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(b)(2)(ii); Gaines, 2011 WL 5555629, at *1 n.1. In short, "[w]hen an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the administrative law judge is whether, were the applicant not a substance abuser, she would still be disabled." Kangail v. Barnhart, 454 F.3d 627, 628–629 (7th Cir. 2006).

The ALJ in the current matter determined, at steps two and three of the sequential analysis, that Plaintiff had severe impairments including an anxiety disorder and drug and alcohol abuse, but that neither impairment met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19–20.) Thereafter, the ALJ considered the limitations occasioned by the combination of Plaintiff's impairments and found that, even with such impairments, Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but had several non-exertional limitations that restricted him to simple, routine repetitive work. Additionally, he was required to have no contact with the public, to work primarily on his own and not as part of a group, and to be in a predictable environment.

5

(Id. at 20.)  Although the ALJ discussed Plaintiff's past history of drug use and continued regular use of marijuana, he did not separately consider whether, without that drug use, Plaintiff would be disabled.  (Id. at 21–23.)  Given this RFC, the ALJ concluded that Plaintiff could work in a significant number of jobs that existed in the national economy.  (Id. at 20–24.)

In his Request for Review, Plaintiff argued that once drug and alcohol abuse was determined to be a severe impairment, the ALJ was required to assess the impact of that impairment on Plaintiff's ability to work.  Yet, according to Plaintiff, the ALJ issued a "drug and alcohol denial" without referencing or complying with the drug and alcohol regulations and the Contract With America Advancement Act of 1996, Pub. L. No. 104-12.  The Magistrate Judge, however, reasoned that, having never made any finding of disability, the ALJ was not required to engage in the analysis, defined in 20 C.F.R. § 416.935(b), of determining if Plaintiff's drug and alcohol abuse was a contributing factor material to the determination of his disability.  (R&R 14.)

Plaintiff now contends that the ALJ's discussion about Plaintiff's drug and alcohol was "so interwoven with the overall residual functional capacity evaluation that a meaningful judicial review of the materiality determination (if a materiality determination was made) is virtually impossible."  (Pl.'s Objections 5–6 (quoting Lambert v. Astrue, No. Civ.A.08-657, 2009 WL 425603, at *16 (W.D. Pa. Feb. 19, 2009).)  In other words, according to Plaintiff, the ALJ's opinion contains no clear statement to suggest that his repeated references to Plaintiff's drug and alcohol abuse were not necessary to the ultimate finding of non-disability, meaning that the ALJ may have improperly considered such factors without making the requisite materiality determinations.  The R&R, according to Plaintiff, disregarded this problem and upheld the decision without consideration of the defects identified by Plaintiff.

In support of this argument—both before the Magistrate Judge and here—Plaintiff has cited several cases finding that the ALJ's decision improperly determined an absence of disability due to the claimant's abuse of drugs or alcohol without engaging in the required materiality analysis. For example, in Praias v. Astrue, No. Civ.A.07-912, 2008 WL 4462293 (W.D. Pa. Sept. 29, 2008), the ALJ made numerous comments that the claimant "remained highly functional during periods of detoxification and abstinence from drugs and alcohol," that "to the extent [claimant] has been unable to work during any period relevant herein due to a substance abuse disorder, payment of benefits would be precluded by Public Law 104-121," and that claimant suffered worsening depression and suicidal ideation when resuming illicit drug use. Id. at *5–6. The court found that "[t]he problem with the ALJ's opinion is that the discussion about Plaintiff's drug and alcohol abuse is so interwoven with the overall residual functional capacity evaluation that meaningful judicial review of the materiality determination (if a materiality determination was made) is virtually impossible." Id. at *6. The court remanded the matter back to the ALJ for a determination of whether drug or alcohol abuse was material to the claimant's disability, i.e. whether the claimant's limitations would exist but for the claimant's use of drugs or alcohol. Id.

Similarly, in Lambert v. Astrue, No. Civ.A.08-657, 2009 WL 425603 (W.D. Pa. Feb. 19, 2009), the ALJ's opinion denying benefits noted that the claimant's hospitalizations were triggered by binge drinking and cocaine usage and that her depressive symptoms decreased without drug and alcohol abuse. Id. at *14. Further, the ALJ remarked that claimant's "allegations of [back] pain may be influenced by her desire to obtain medications for non medical use. Her need for inpatient psychiatric treatment is frequently triggered by substance

7

abuse and a failure to take prescribed medications." Id. at *15. Finally, the Commissioner's brief argued that "Plaintiff, when not using cocaine, has no more than moderate mental limitations of function." Id. On review, the court determined that it was "not entirely clear whether the ALJ relied on Plaintiff's use of drugs or alcohol as a basis for denying her applications . . . [as] [t]he opinion contains no specific findings as to which (if any) of Plaintiff's functional limitations would remain if she were to stop abusing drugs and alcohol, or as to whether Plaintiff was able to sustain the demands of a full-time job given her existing limitations (including those directly attributable to drug and alcohol abuse)." Id. at *16. Ultimately, the court remanded for further proceedings, noting that "[t]he ALJ's vague opinion, when coupled with the particular arguments raised in the Commissioner's brief concerning the application of § 105, leads the Court to believe that the ALJ improperly chose to rely on Plaintiff's use of drugs or alcohol as a basis for denying her applications without proceeding in accordance with the framework established by the Commissioner's regulations." Id.

Finally, in Lang v. Barnhart, No. Civ.A.05-1497, 2006 WL 3858579 (W.D. Pa. Dec. 6, 2006), the ALJ repeatedly noted a direct correlation between alcohol abuse and depression without making "any finding of fact with regard to the effects of [the claimant's] mental impairments considered independently of his alcohol abuse." Id. at *6. Nor was there "any reference to the special analysis required pursuant to § 404.1535." Id. On review, the court noted that there was evidence of depression and anxiety which may have been distinguishable from mental problems resulting from alcohol abuse, and that the claimant may have used alcohol as a way of dealing with chronic pain. Id. at *6–8. The court concluded that the ALJ erred by failing to make a disability determination "without the 'deductions' for the assumed affects of

8

alcohol use." Id. at *8; see also Castile v. Astrue, No. Civ.A.10-210, 2011 WL 4102539, at *10 (W.D. Pa. Sept. 14, 2011) (remanding for further proceedings where it was unclear whether a particular limitation in an RFC analysis was attributable to continuing drug or alcohol use).

In the present matter, the ALJ's decision does not suffer from the same defects existing in these cases. Plaintiff's alleged disability began in May 2007, but few treatment notes after that time discuss drug use. The ALJ noted that in 2007, Plaintiff initiated outpatient psychiatric treatment due to attention deficit hyperactivity, bipolar disorder, polysubstance dependence, and avoidant and borderline personality disorders. (R. 21.) Treatment was interrupted by Plaintiff's incarceration from December 2007 to July 2008, following which he sought both a substance abuse and a mental health program and ultimately ceased opiate use. (Id.) The remainder of the medical notes explicitly reviewed by the ALJ discuss Plaintiff's treatment for his anxiety disorder, opiate dependence, and social disorder, together with the symptoms he suffered from these conditions.[3] (Id.) Although the ALJ referenced Plaintiff's continued marijuana use, he did not state or imply—unlike in the aforementioned cases—that the drug use was the cause of Plaintiff's limitations or otherwise exacerbated his symptoms. Nor did the ALJ discount Plaintiff's other mental disorders, but rather specifically credited many of Plaintiff's limitations resulting from these disorders, remarking that he was restricted to simple, routine, repetitive work involving no contact with the public, and that he work primarily on his own and not as part of a group in a predictable environment. (Id. at 23–24.) The ALJ ultimately deemed Plaintiff not disabled in light of Plaintiff's activities of daily living such as going to school, engaging in self-

---

[3] As noted by the R&R, the earliest possible disability onset date is the date Plaintiff protectively filed for SSI benefits in early 2009. Thus, records prior to the filing date are irrelevant. (R&R 17–18.)

care, shopping, playing video games, and reading.  (Id. at 23.)

In short, and unlike the above cases, the ALJ clearly did not rely on Plaintiff's use of drugs and alcohol as a basis for denying his application.  Quite to the contrary, the ALJ took into consideration all of the limitations from all of his impairments and found that, even with Plaintiff's continued marijuana use, he would be able to sustain a full-time job, albeit on a limited basis.  In other words, whereas the claimants in the referenced cases suffered increased symptoms with drug use that resulted in potential disability, the ALJ in this matter found that Plaintiff's ongoing marijuana use and anxiety disorders still left him with the residual functional capacity to perform substantial gainful activity in the national economy.  Having made such a disability determination, the ALJ had no legal obligation to engage in the materiality analysis of 20 C.F.R. § 416.935(b).  Accordingly, the Court denies this objection.

> **B.** **Whether the Report and Recommendation Improperly Found that the ALJ's Mental Residual Functional Capacity Assessment Was Correct**

Via his second objection, Plaintiff contends that the ALJ's mental residual functional capacity assessment is in error.  Specifically, Plaintiff argues that the ALJ failed to comply with Social Security Ruling 96-8p, which requires an adjudicator to consider limitations and restrictions imposed by all of an individual's impairments, even those that are not defined as "severe."  According to Plaintiff, however, the ALJ failed to explain what symptoms and functional limitations caused by Plaintiff's drug and alcohol abuse disorder went into the ALJ's residual functional capacity assessment.  In turn, the Report and Recommendation failed to address this error, finding only that the mental residual functional capacity was supported by substantial evidence.

10

"'Residual Functional Capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (quoting Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (quotations omitted); 20 C.F.R. § 416.925(a)(1)). In determining a claimant's residual functional capacity, all of the claimant's impairments, including those not considered "severe" must be considered. 20 C.F.R. § 416.945(a)(2); see also Social Security Ruling 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.") Additionally, the ALJ must consider all evidence of record, including the claimant's subjective complaints and evidence of activity level. Burnett, 220 F.3d at 121 (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986)). "Where the Commissioner finds at least one of a claimant's impairments to be severe and adequately incorporates any limitations resulting from both severe and non-severe impairments into his residual functional capacity assessment, the specific determinations at the second step concerning the non-severe impairments are of no dispositive significance." Lambert v. Astrue, No. Civ.A.08-657, 2009 WL 425603, at *13 (W.D. Pa. Feb. 19, 2009); see also Clark v. Astrue, No. Civ.A.09-933, 2010 WL 1425326, at *14 (W.D. Pa. Apr. 6, 2010).

Plaintiff's medical records, in this case, reveal that upon his release from prison in July 2008, he received drug and alcohol treatment and did not continue his extensive opiate drug

11

abuse. Although he was diagnosed with opioid dependence in January 2009, there was no evidence of opioid use after that time, even though he continued to take Suboxone. Indeed, Plaintiff himself testified at his May 2010 hearing that he had been opiate-free for about a year and a half. (R. 48.) Given the absence of any continued opioid use after the disability-onset date, the ALJ properly did not consider any ongoing limitations from that impairment.

With respect to his marijuana use, the ALJ remarked that Plaintiff continued to smoke regularly during the entire disability period. (Id. at 22–23.) Throughout that time, however, Plaintiff attended school, received good grades, played video games, tended to self-care, and did routine chores. (Id.) As noted above, the ALJ, taking both the marijuana use and the anxiety disorder into consideration, imposed significant limitations on Plaintiff including simple, routine, repetitive work involving no contact with the public, and working primarily on his own and not as part of a group, in a predictable environment. The ALJ did not note any limitations uniquely created by the marijuana use, separate and apart from those created by the anxiety disorder. While he now argues that this absence of unique limitations attributed to the marijuana use shows the ALJ's failure to consider how his drug use impacted his ability to function in a work environment, Plaintiff makes no effort to identify what additional limitations are supported by the record and should have been included in the residual functional capacity analysis. See Clark v. Astrue, 2010 WL 1425326, at *14 (W.D. Pa. 2010) ("If [claimant] believed herself to have limitations in excess of those identified . . ., the onus was on her to present evidence from her treating physicians establishing the existence of those limitations."). Nor does Plaintiff provide any legal support for the proposition that the ALJ must allocate each specific limitation in an RFC assessment to specific impairment—particularly where the impairments are related and can

12

cause similar limitations. Given the content of the record, the Court finds that the ALJ had substantial evidence to conclude that Plaintiff's substance abuse did not rise to the level of disabling, either individually or in concert with his anxiety disorder.

> C. **Whether the Report and Recommendation Improperly Rejected Plaintiff's Argument that the ALJ Had a Duty to Discuss Detailed Hand Written Statements from the Treating Psychiatrist *or* Had a Duty to Recontact the Treating Psychiatrist for Clarification**

Plaintiff's next objection contests the ALJ's failure to recontact his treating physician, Dr. Margi C. Shah of Main Line Health's Center for Addictive Diseases. The ALJ discussed Dr. Shah's December 14, 2009 medical source statement and determined that it was not entitled to controlling weight. In his Request for Review, Plaintiff argued that the ALJ failed to quote from Dr. Shah's handwritten notations and explanations in the medical report. He went on to argue that "[a]t a minimum the ALJ had a duty to recontact Dr. Shaw [sic] to clarify any questions the ALJ had on this subject. In this regard the ALJ failed to comply with 20 C.F.R. § 416.912(e)." (Pl.'s Mem. Supp. Request for Review 8.) Considering this argument, the R&R commented that because the Court's copy of the statement was too light to be read, the Magistrate Judge relied on the ALJ's summarization of that report. (R&R 8 n.2.) Ultimately, the R&R affirmed the ALJ's rejection of Dr. Shah's report. Plaintiff now contends that "the ALJ erred in not addressing the discrepancy between his findings and the statements of the treating physician or the ALJ erred in failing to recontact the doctor to request a more legible copy of his notes for the ALJ's consideration." (Pl.'s Objections 12.)

The regulations regarding the duty to recontact state as follows:

When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled,

13

we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 416.912(e).[4] Social Security Ruling 96-5p further provides that:

Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

Social Security Ruling SSR 96-5p, 1996 WL 374183, at *6 (S.S.A. July 2, 2006).

Under these standards, nothing in the record before the Court triggered the ALJ's duty to recontact Dr. Shah. First, the ALJ did not have any obvious difficulty reading Dr. Shah's report. Indeed, the ALJ thoroughly summarized the report, referencing specific notations, and declined to accord controlling weight to the report as follows:

I am unable to give this assessment much weight, as it seems to have little support in the treatment records, which reflect that the claimant has problems with anxiety but also repeatedly refer to him as doing well, being euthymic, and doing well in school. Dr. Shah attributes many of the claimant's limitations to frequent and severe panic attacks and mood swings, yet there is little discussion in the treatment records of panic attacks and mood swings. The Medical Source Statement appears to be describing somebody who is almost completely unable to function, which is not what

---

[4] The Social Security Administration eliminated this provision and § 404.1512(e)(1), effective March 26, 2012. See generally How We Collect and Consider Evidence of Disability, 77 Fed.Reg. 10,651 (Feb. 23, 2012). The new protocol for recontacting medical sources is set forth in 20 C.F.R. §§ 404.1520b, 416.920b. See Gray v. Astrue, No. Civ.A.10-507, 2012 WL 1521259, at *3 n.1 (E.D. Pa. May 1, 2012). As this case arose prior to March 26, 2012, the Court applies the prior version.

14

> the treatment records indicate . . . Among other things, the treatment records suggest that the claimant is functioning well enough and maintains sufficient social contacts to obtain marijuana on a fairly regular basis.

(R. 23.) To the extent Plaintiff faults the ALJ for not specifically quoting certain lines, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). While the report became illegible when copied for review by this Court, the Magistrate Judge appropriately relied upon the ALJ's thorough summary. Ultimately, the ALJ's rejection of Dr. Shah's assessment was not based on "less than legible notations"—as Plaintiff presumes—but rather was grounded on the fact that the opinion stood in contradiction to the treatment records documenting Plaintiff's progress over a period of time. Accordingly, the ALJ would have had no reason to recontact Dr. Shah to obtain a more legible copy.

Nor did the fact that there was a discrepancy between the assessment and the ongoing treatment notes trigger the ALJ's duty to recontact Dr. Shah. "[T]he regulation makes clear that the ALJ only need re-contact the medical source when the evidence received from the medical source is inadequate to determine whether or not the claimant is disabled," not because the ALJ finds the doctor's opinion inconsistent with the claimant's medical records. Becker v. Barnhart, No. Civ.A.03-6373, 2005 WL 747047, at *5 (E.D. Pa. April 1, 2005). "[M]ost cases in this circuit have concluded that 'notwithstanding the deficiencies of a treating physician's opinion, the evidence on record remained 'adequate' to reach a disability determination.'" Thurman v. Barnhart, No. Civ.A.05-5447, 2007 WL 2728656, at *7 (E.D. Pa. Sept. 18, 2007). Indeed, it is well-established that "[w]hen the treating physicians' conclusions are inconsistent with the objective medical evidence in the record, or the limitations on a claimants' ability reported by the

15

treating physicians are not supported by objective medical evidence, the ALJ is permitted to give these conclusions little or no weight." Becker, 2005 WL 741047, at *4. In such a case, an ALJ is not obligated to recontact the treating physician and request an explanation of the inconsistency between the physician's treatment notes and his assessment. Thurman, 2007 WL 2728685, at *7.

In this case, Dr. Shah's medical assessment was not internally inconsistent. Rather, it was only inconsistent with the objective evidence and treatment notes. To the extent the ALJ recognized such an inconsistency, he was entitled to give Dr. Shah's report less deference without any accompanying duty to recontact the doctor for further information. Accordingly, the Court denies this objection as well.

### D. **Whether the Report and Recommendation Incorrectly Found that the ALJ Was Not Required to Explain Why Plaintiff Could Sustain Work Activity Despite Being Unable to Do So for All Jobs He Performed in the Past**

In his final objection, Plaintiff remarks that, at the administrative hearing, the ALJ inquired at length into past work activities. In response, Plaintiff explained that for each of the six jobs he had held in the past, he had been unable to work successfully in any of them due to his lateness and panic attacks. The ALJ's opinion, however, never discussed the import of these failed work attempts. When Plaintiff identified this alleged deficiency in his Request for Review, the Magistrate Judge found that the ALJ was not required to explain why Plaintiff could currently sustain work activity when he could not in the past. Plaintiff now contends that this ruling is in error.

20 C.F.R. § 416.912 sets forth the evidence that an ALJ will consider in rendering his/her disability determination. Among this evidence are "[s]tatements you or others make about your

impairment(s), your restrictions, your daily activities, *your efforts to work*, or any other relevant statements you make to medical sources during the course of examination or treatment, or to us during interviews, on applications, in letters, and in testimony in our administrative proceedings." 20 C.F.R. § 416.912(b)(3) (emphasis added). Similarly, Social Security Ruling 96-8p states that an RFC assessment "must be based on *all* of the relevant evidence in the case record, such as: . . . [e]vidence from attempts to work." SSR 96-8p, 1996 WL 374174, at *5 (emphasis in original). Courts have remanded cases where the ALJ failed to consider a claimant's work history in connection with his or her credibility determination where the claimant had a previous productive work history and had unsuccessfully made attempts to return to work after the onset of the disability. See, e.g., Reider v. Apfel, 115 F. Supp. 2d 496, 505 (M.D. Pa. 2000) (finding that ALJ failed to properly address claimant's work history and post-accident unsuccessful work attempts); Sidberry v. Bowen, 662 F. Supp 1037, 1039–40 (E.D. Pa. 1986) (ALJ erred in ignoring claimant's work history and efforts to hold down a job).

At the administrative hearing in this matter, the ALJ inquired extensively about Plaintiff's past relevant work. Plaintiff testified that he had held several jobs, but he could not sustain them for extended periods. First, he worked in food delivery at Michael's Delicatessen, which lasted for less than one month because he got fired due to his lateness (April 2007). (R. 42–43, 184.) Prior to that, he worked at Walgreen's thirty to thirty-two hours per week in the photo department, until he was again fired for lateness (August 2006 to November 2006). (Id. at 43-44, 184.) He landscaped part-time for the YMCA for approximately four months (September 2004 to November 2004). (Id. at 44, 184.) Previously, he worked for Fed Ex for a couple of months unloading trucks on a part time basis (January 2004 to March 2004). (Id. at 45, 184.)

Additionally, he worked part-time for FAO Schwarz in the King of Prussia Mall on a full-time basis (November 2002 to June 2003). (Id. at 45.) Finally, going back to 1998, Plaintiff worked at the local library as a page. (Id. at 46.) He then testified that he was unable to sustain any work because of his panic attacks, racing thoughts and eventual breakdowns. (Id. at 47.)

Unlike the aforementioned cases wherein courts have remanded for further consideration of a claimant's work efforts, Plaintiff in this case has no long and productive work history preceding his disability followed by multiple attempts at work after the onset of his disability. Indeed, Plaintiff's work attempts occurred between the ages of 15 up until age 23. Thereafter, from December 2007 to June 2008, he was incarcerated on drug charges and made no attempt to work after his release up through the filing of his application for benefits in early 2009. The ALJ, while not comprehensively discussing this work history in his opinion, referenced that history and appropriately found that none of the work was performed at the level of substantial gainful activity, meaning that Plaintiff would not have to meet his step four burden of proving that he could not return to his past relevant work. (Id. at 24.) Given that conclusion, the ALJ then bore the burden of establishing that, even though Plaintiff's past work efforts in the jobs he attempted were unsuccessful, there were jobs in the national economy which Plaintiff could do with his limitations. To that end, the ALJ consulted with and took testimony from a vocational expert who identified two jobs—unskilled assembler and housekeeping cleaners—that an individual with Plaintiff's restrictions and impairments could successfully perform. (Id. at 76–83.) Nothing more was required. See Corley v. Barnhart, 102 F. App'x 752, 755 (3d Cir. 2004) (refusing to remand a case based on the ALJ's failure to have commented on the claimant's work history, noting that in cases that were remanded "the claimant not only had a

long and productive history, but also showed evidence of severe impairments or attempted to return to work, and neither of these circumstances exist here"); see also Fox v. Astrue, No. Civ.A.10-192, 2011 WL 3882507, at *10 (W.D. Pa. Sept. 2, 2011) (holding that where a claimant did not attempt to work after the alleged onset date, no remand for consideration of work history was necessary). Accordingly, the Court finds no error in the ALJ's opinion or the Report and Recommendation on this issue.

## IV. CONCLUSION

In sum, the Court has no basis on which to either reject the Report and Recommendation or reverse/remand the decision of the ALJ in this matter. While Plaintiff obviously suffers from some mental health impairments and a history of substance abuse, the ALJ properly concluded, using the correct legal analysis and with the support of substantial evidence, that Plaintiff was capable of performing some—albeit a limited range of—work within the national economy. Such a determination precludes a finding of disability for purposes of an award of Social Security benefits.